FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 09, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DEBORAH WALLACE, o.b.o., MISTY C., deceased,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 1:18-CV-3101-JTR<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 14, 15. Attorney D. James Tree represents Plaintiff; Special Assistant United States Attorney Leisa A. Wolf represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 7. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## JURISDICTION

In early 2014, Plaintiff filed applications for a period of disability, Disability Insurance Benefits (DIB), and Supplemental Security Income (SSI), alleging

ORDER GRANTING DEFENDANT'S MOTION . . . - 1

disability since June 14, 2013, due to "mental health issues," PTSD, and bipolar disorder. Tr. 201, 205, 242. Plaintiff's applications were denied initially and upon reconsideration.

Administrative Law Judge (ALJ) M.J. Adams held a hearing on March 2, 2017, Tr. 36-64, and issued an unfavorable decision on March 30, 2017, Tr. 15-25. The Appeals Council denied review on April 13, 2018. Tr. 1-5. The ALJ's March 2017 decision thus became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on June 15, 2018. ECF No. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was born on August 20, 1975, and was 37 years old on the alleged disability onset date, June 14, 2013. Tr. 201. She completed her GED in 1997. Tr. 41, 243. Plaintiff's disability report indicates she stopped working on June 14, 2013, because of her conditions. Tr. 242. Plaintiff testified at the administrative hearing held on March 2, 2017, that she had been unable to cease her binging and purging eating disorder (bulimia) which began at age 13. Tr. 52-53. She stated bulimia caused her to have memory issues, Tr. 52, and made her physically weak, Tr. 57.

Plaintiff testified she last worked in 2015, earning nearly $14,000 as a housecleaner and by providing homecare services. Tr. 41-43. When asked why she believed she was no longer able to do her past work, Plaintiff stated that every time she finds a job, she sabotages it by talking herself out of it. Tr. 47. When asked to elaborate, she indicated she was afraid she was not going to be able to perform the job correctly. Tr. 49-50. Plaintiff testified she did not think she could perform even a simple job with little public or supervisor contact because she

believed she would let herself and others down. Tr. 54-55. However, when asked about a 2014 job offer, Plaintiff stated she believed she deserved a greater pay rate than offered, but she also indicated she was fearful of working at night and of the possibility she would start to drink again. Tr. 55-56.

The record reflects Plaintiff passed away unexpectedly in April 2017. ECF No. 14 at 6. Pursuant to 20 C.F.R. § 404.503(b), if an individual who has been underpaid dies, Social Security distributes underpayment to persons by order of priority. This priority first flows to the surviving spouse, then to children, then to parents, and lastly, to the legal representative of the deceased. Deborah Wallace, Plaintiff's mother, qualifies as the real party in interest in this action. 20 C.F.R. § 404.503(b).

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v.*

*Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that the claimant can perform other jobs present in significant numbers in the national economy. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On March 30, 2017, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had engaged in substantial gainful activity (SGA) for all of 2015, but also found there had been continuous 12-month periods during which Plaintiff had not engaged in SGA throughout the relevant time period. Tr. 18.

At step two, the ALJ determined Plaintiff had the following severe impairments: depressive disorder, anxiety disorder, trauma-stress related anxiety disorder, personality disorder, and eating disorder. Tr. 18.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 18.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and determined she could perform a full range of work at all exertional levels with the following limitations: she can understand, remember and carry out simple instructions; she can make judgments commensurate with the functions of unskilled work, i.e., work which needs little or no judgment to do simple duties, and the person can usually learn to do the job in 30 days where little specific vocational preparation and judgment are needed; she can respond appropriately to supervision, but should not be required to work in close coordination with coworkers where teamwork is required; she can deal with occasional changes in the work environment; and she can do work that does not require any contact with the general public to perform the work tasks. Tr. 20.

At step four, the ALJ determined Plaintiff was not able to perform her past relevant work as a day worker/housekeeper; nurse assistant; bartender; or waitress, bar. Tr. 23-24.

At step five, the ALJ determined that based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience and RFC, Plaintiff could perform other jobs present in significant numbers in the national economy, including the jobs of industrial cleaner, kitchen helper, and laundry worker. Tr. 24-25. The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from April 3, 2014 (the day after determinations on Plaintiff's prior applications for DIB and SSI became administratively final, Tr. 15), through the date of the ALJ's decision, March 30, 2017. Tr. 25.

///

///

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

Plaintiff contends the ALJ erred in this case (1) at step one when determining Plaintiff had performed Substantial Gainful Activity (SGA) in 2015; (2) in rejecting Plaintiff's symptom testimony; and (3) when weighing the medical and lay witness opinion evidence. ECF No. 14 at 1.

## DISCUSSION[1]

### A. Substantial Gainful Work Activity

Plaintiff contends the ALJ reversibly erred by determining at step one of the sequential evaluation process that Plaintiff had engaged in substantial gainful activity (SGA) in 2015. ECF No. 14 at 6-8.

"The concept of substantial gainful activity involves the amount of compensation and the substantiality and gainfulness of the activity itself." *Keyes v. Sullivan*, 894 F.2d 1053, 1056 (9th Cir. 1990). In this regard, substantial gainful activity is work activity that is both substantial and gainful:

> (a) Substantial work activity. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.

---

[1]In *Lucia v. S.E.C.*, 138 S.Ct. 2044 (June 21, 2018), the Supreme Court held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause. To the extent *Lucia* applies to Social Security ALJs, the parties have forfeited the issue by failing to raise it in their briefing. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the Court will not consider matters on appeal that were not specifically addressed in an appellant's opening brief).

> (b) Gainful work activity. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

20 C.F.R. § 404.1572(a)-(b). "If your duties require use of your experience, skills, supervision and responsibilities, or contribute substantially to the operation of a business, this tends to show that you have the ability to work at the substantial gainful activity level." 20 C.F.R. § 404.1573(a). Moreover, "there is a presumption of substantial gainful employment if the applicant earns over the amount specified in the guidelines." *Keyes*, 894 F.2d at 1056. However, "[t]he claimant may rebut a presumption based on earnings with evidence of his inability to be self-employed or to perform the job well, without special assistance, or for only brief periods of time." *Id*. (citing *Anderson v. Heckler*, 726 F.2d 455, 456 (8th Cir. 1984)). "In considering whether the presumption is rebutted, the factors to be considered include the responsibilities and skills required to perform the work, the amount of time the individual spends working, the quality of the individual's work, special working conditions, and for individuals who are self-employed, the value of their work to the business." *Corrao v. Shalala*, 20 F.3d 943, 948 (9th Cir. 1994); *see also Katz v. Secretary of Health & Human Services*, 972 F.2d 290, 293 (9th Cir. 1992) ("The earnings presumption can be rebutted. Factors to be considered in addition to the amount earned include the time spent working, quality of a person's performance, special working conditions, and the possibility of self-employment."). "There are cases in which although the claimant is currently earning a decent wage, he really is permanently disabled from engaging in gainful activity. Maybe his boss feels desperately sorry for him and is retaining him on the payroll even though he is incapable of working. That act of charity ought not be punished by denying the employee benefits and thus placing pressure on the employer to retain an unproductive employee indefinitely." *Jones v. Shalala*, 21 F.3d 191, 192 (7th Cir. 1994); *see also Corrao*, 20 F.3d at 948 ("While it is clear that Corrao's 'income' establishes a presumption that he is

engaged in SGA, these guidelines are only a presumption and do not relieve an ALJ of the duty to develop the record fully and fairly.").

While Plaintiff contends her job as a home health care aide was an unsuccessful work attempt, the bulk of Plaintiff's 2015 earnings were from self-employment which would have resulted in earnings below the SGA level, and the statements of lay witnesses evince accommodations in Plaintiff's work, ECF No. 14 at 6-8; ECF No. 16 at 1-2, Plaintiff testified she worked all of 2015, she earned nearly $14,000 as a housecleaner and by providing homecare services in 2015, and she did not report any type of special help or accommodations for performing this work, Tr. 41-44; *see Burkhalter v. Schweiker*, 711 F.2d 841, 843 (8th Cir. 1983) (finding an impaired woman who was able to work competently as a house cleaner five hours per day without special help was engaged in substantial gainful activity). It thus appears the ALJ did not err by finding Plaintiff performed SGA in 2015.

Nevertheless, the ALJ found there had also been continuous 12-month periods during which Plaintiff had not engaged in SGA throughout the relevant time period, Tr. 18, proceeded with the sequential evaluation process, and continued to make findings through step five of the sequential evaluation process. Consequently, the Court finds that any error with respect to the ALJ's step one finding is harmless. *See Johnson v. Shalala*, 60 F.3d 1428, 1436 n.9 (9th Cir. 1995) (an error is harmless when the correction of that error would not alter the result). An ALJ's decision will not be reversed for errors that are harmless. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citing *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1991).

**B.     Plaintiff's Symptom Testimony**

Plaintiff next challenges the ALJ's rejection of Plaintiff's symptom testimony. ECF No. 14 at 8-14.

It is the province of the ALJ to make credibility determinations. *Andrews*, 53 F.3d at 1039. However, the ALJ's findings must be supported by specific

cogent reasons.  *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).  "General findings are insufficient:  rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In this case, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical and other evidence of record.  Tr. 21.

The ALJ first determined Plaintiff's allegations of disabling mental impairments were not substantiated by the objective medical evidence.  Tr. 21.  A lack of supporting objective medical evidence is a factor which may be considered in evaluating an individual's credibility, provided it is not the sole factor.  *Bunnell v. Sullivan*, 347 F.2d 341, 345 (9th Cir. 1991) (Once a claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject the claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain.); *Robbins v. Soc. Sec. Admin.*, 466 F3d 880, 883 (9th Cir. 2006) (An ALJ may not make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence.").

Plaintiff contends that although the record does not establish a pattern of continuous disability, it shows she sometimes had improved symptoms and other times had worse symptoms.  ECF No. 14 at 13.  However, as indicated by the ALJ, her mental functionality on medical exam, Tr. 445 (report of Shane Anderson, Pharm. D.), was good:  she dressed casually and appropriately; she did not exhibit

any abnormal motor activity; she spoke normally, in a goal-directed manner; she was not delusional and did not report hallucinations; she had a full range of affect and was both pleasant and appropriate; she did not express suicidal or homicidal ideation; her memory and intellectual functioning were not impaired; and her insight and judgment were fair. Tr. 21. The ALJ also noted the weight of the medical evidence reflected Plaintiff was alert, oriented, and had an appropriate mood/affect, intact memory and/or no medication side-effects. Tr. 21, 684, 882, 937-938, 1204, 1245, 1251, 1258, 1264, 1270. It was further noted that in May 2016 Plaintiff continued to work toward controlling triggers for her bulimia, which occasionally fared up. Tr. 20, 1246.

As concluded by the ALJ, the objective medical evidence demonstrates Plaintiff was not as mentally limited as she alleged in this case.

Second, the ALJ noted inconsistencies within the record that detracted from Plaintiff's reliability regarding her impairments. Tr. 21-22.

In determining credibility, an ALJ may engage in ordinary techniques of credibility evaluation, such as considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony. *Burch*, 400 F.3d at 680; *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). When a claimant fails to be a reliable historian, "this lack of candor carries over" to other portions of her testimony. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

The ALJ determined that Plaintiff's allegation of disabling mental conditions was inconsistent with her ability to work throughout 2015. Tr. 21-22. The ability to perform even part-time work can be considered in assessing a claimant's credibility. *Bray v. Comm'r Social Security Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (finding the ALJ properly discounted the claimant's testimony because she recently worked as a personal caregiver for two years and had since sought out other employment). It is undisputed Plaintiff worked at least part-time as a housecleaner and provider of homecare services throughout 2015. Tr. 41-44. The

ALJ properly considered the foregoing inconsistency in discounting Plaintiff's subjective complaints.

The ALJ also determined that Plaintiff had been advised to become more, as opposed to less, active. Tr. 22. The record cited by the ALJ indicates merely that Plaintiff "will continue to attend AA meetings on a regular basis and find a sponsor." Tr. 653. The Court is not convinced this citation exhibits an inconsistency as there is no connection to any specific statement of Plaintiff, nor is it clear the medical record undermines Plaintiff's specific assertions of disabling symptoms. However, given the ALJ's other reasons for finding Plaintiff less than fully credible, *supra*, the Court finds this error harmless. *See Carmickle*, 533 F.3d 1160, 1163 (9th Cir. 2008) (upholding adverse credibility finding where ALJ provided four reasons to discredit claimant, two of which were invalid); *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (affirming credibility finding where one of several reasons was unsupported by the record).

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. The Court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon *de novo* review. 42 U.S.C. § 405(g). After reviewing the record, the Court finds that the ALJ provided clear and convincing reasons, which are fully supported by the record, for finding Plaintiff's symptom allegations were not entirely credible in this case.

**C.   Lay Witness Statements**

Plaintiff further contends the ALJ erred by rejecting the testimony of lay witnesses Adrianna Shadlon, Bruce Smith and Matthew Walkenhauer. ECF No. 14 at 18-20; ECF No. 16 at 7.

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Id.* at 1115 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). This error may be harmless "where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited." *Id.* at 1118-1119. Additionally, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)).

The ALJ mentioned the third-party statements of Adrianna Shadlon, Bruce Smith and Matthew Walkenhauer indicated Plaintiff was anxious, depressed and distracted. Tr. 21. It is thus clear the ALJ considered the limitations discussed in the statements of Ms. Shadlon, Mr. Smith and Mr. Walkenhauer. Tr. 334-336. The ALJ specifically accorded "partial weight" to all three opinions and found they evidenced the most Plaintiff could do was a reduced range of unskilled work with limited social contact/interaction. Tr. 22.

Since the ALJ ultimately determined Plaintiff was not capable of performing her past relevant work as a caretaker or housekeeper, the statements of the lay witnesses which describe Plaintiff's difficulty performing this work do not

demonstrate Plaintiff is limited to a greater extent than that found by the ALJ in this case. Tr. 23-24. Moreover, the lay witnesses' statements were not expressly rejected by the ALJ, Tr. 22; therefore, the ALJ was not required to provide an explanation for his consideration of their statements. The Court thus finds the ALJ did not err with regard to the lay witnesses' statements in this case.

**D.    Opinion Testimony**

Plaintiff asserts the ALJ erred by rejecting the opinions of "other sources" Shane Anderson, Marc Shellenberg and Carole Robinson and instead according greater weight to acceptable medical sources Thomas Clifford, Ph.D., and John F. Robinson, Ph.D. ECF No. 14 at 15-18.

In a disability proceeding, the courts distinguish among the opinions of three types of acceptable medical sources: treating physicians, physicians who examine but do not treat the claimant (examining physicians) and those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). A treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a nonexamining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester*, 81 F.3d at 830. In weighing the medical opinion evidence of record, the ALJ must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. *Magallanes*, 881 F.2d at 751. Moreover, the ALJ is required to set forth the reasoning behind its decisions in a way that allows for meaningful review. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (finding a clear statement of the agency's reasoning is necessary because the Court can affirm the ALJ's decision to deny benefits only on the grounds invoked by the ALJ). "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were

///

supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014).

The opinion of an acceptable medical source is generally given more weight than evidence provided by an "other source."[2] 20 C.F.R. §§ 404.1527, 416.927; *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). Pursuant to *Dodrill*, 12 F.3d at 915, an ALJ is obligated to provide germane reasons for discounting "other source" statements.

Shane Anderson, Pharm.D., an "other source," filled out a "WorkFirst Documentation Request Form for Medical or Disability Condition" on April 25, 2014. Tr. 435-437. Pharmacist Anderson checked boxes indicating Plaintiff's condition[3] limited her ability to work to only one to 10 hours per week. Tr. 435. He indicated the basis for his opinion was **Plaintiff** "**reports** low energy, difficulty with concentration, anxiety in social situations which is secondary to her PTSD." Tr. 435.

Case Manager Marc Shellenberger, an "other source," also completed a "WorkFirst Documentation Request Form for Medical or Disability Condition" on September 2, 2014. Tr. 438-442. Mr. Shellenberger likewise checked boxes indicating Plaintiff's condition restricted her ability to work to one to 10 hours per

///

---

[2]Evidence from "other sources" is any information or statements from a non-medical source about any issue raised by the claimant in the case. 20 C.F.R. § 404.1513(a)(4).

[3]However, Mr. Anderson concluded Plaintiff's condition was not permanent and was expected to last for only six months. Tr. 436; see 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (an individual shall be considered disabled if she has an impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months).

week.[4]  Tr. 438.  In support of his opinion in this regard, Mr. Shellenberger wrote that **Plaintiff** "**reports** continued generalized anxiety" and that "mood instability has not responded favorably to medications."  Tr. 438.

Finally, on May 16, 2016, other source Carole Robinson completed a "WorkFirst Documentation Request Form for Medical or Disability Condition" and found Plaintiff's condition resulted in an inability to work.  Tr. 1076-1078.  Ms. Robinson noted the basis for this conclusion as **Plaintiff** "**reports** poor memory retention and following written employability plan."  Tr. 1076.

The ALJ accorded the foregoing check-box opinions little weight.  Tr. 23.  The ALJ determined the opinions lacked adequate explanation and were reliant upon Plaintiff's non-credible subjective allegations.  Tr. 22-23.

Although the Ninth Circuit recently stated in a footnote that there is no authority that a "check-the-box" form is any less reliable than any other medical form, *Trevizo v. Berryhill*, 871 F.3d 664, 677 n. 4 (9th Cir. 2017), the Ninth Circuit has consistently held that individual medical opinions are preferred over check-box reports, *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983); *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (holding "the regulations give more weight to opinions that are explained than to those that are not").  An ALJ's rejection of a check-box report that does not contain an explanation of the bases for the conclusions made is permissible.  *Crane*, 76 F.3d at 253; *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986) (an ALJ need not accept a physician's opinion which is "brief and

///

---

[4] Just one month prior, on August 6, 2014, Mr. Shellenberger filed out a "WorkFirst Documentation Request Form for Medical or Disability Condition" and opined Plaintiff's condition limited her ability to work to 21 to 30 hours per week.  Tr. 1081-1084.

ORDER GRANTING DEFENDANT'S MOTION . . . - 15

conclusionary in form with little in the way of clinical findings to support [its] conclusion").

Here, the "WorkFirst Documentation Request Form for Medical or Disability Condition" check-box form reports provide little explanation in support of the significant limitations assessed. As noted by the ALJ, what little support offered on the form reports indicates the other sources relied to a great extent on Plaintiff's subjective reporting. Tr. 23 ("Misty reports," "Misty says," "[c]lient reports"). Since, as determined above, Plaintiff was properly found by the ALJ to be not entirely credible in this case, the ALJ appropriately accorded little weight to medical reports based primarily on subjective complaints. *See Tonapetyan*, 242 F.3d at 1149 (a physician's opinion premised primarily on a claimant's subjective complaints may be discounted where the record supports the ALJ's discounting of the claimant's credibility); *Morgan*, 169 F.3d at 602 (the opinion of a physician premised to a large extent on a claimant's own account of symptoms and limitations may be disregarded where they have been properly discounted).

The ALJ provided germane reasons for according little weight to the significant limitations assessed on the check-box form reports of other sources Anderson, Shellenberg and Robinson.

State agency medical professional Thomas Clifford, Ph.D., evaluated Plaintiff's mental residual functional capacity on April 1, 2015. Tr. 92-96. On May 1, 2015, state agency reviewer John F. Robinson also considered Plaintiff's condition. Tr. 114-118. These nonexamining medical professionals determined Plaintiff could perform work activity on a consistent basis that involved routine, simple instructions/tasks with limited social contact/interaction. *Id*.

The ALJ accorded "significant weight" to the state agency opinions, finding their opinions were consistent with the weight of the medical evidence and Plaintiff's documented ability to work throughout 2015. Tr. 22.

///

Plaintiff contends the ALJ failed to provide sufficient reasons for "giving the most weight" to the nonexamining medical professionals. ECF No. 14 at 15. When a nontreating source's opinion contradicts that of a treating physician, but it is not based on independent clinical findings, the opinion of the treating physician may be rejected only if the ALJ gives specific, legitimate reasons for doing so that are based on substantial evidence in the record. *Andrews,* 53 F.3d at 1041; *Ramirez v. Shalala*, 8 F.3d 1449, 1453 (9th Cir. 1993) (applying test where ALJ relied on contradictory opinion of nonexamining medical advisor). Here, there is no acceptable treating physician opinion that contradicts the assessments of the state agency reviewers. Moreover, there is no requirement that the ALJ provide "sufficient reasons" for according weight to a medical professional, rather the Court reviews whether the ALJ has failed to provide legally sufficient reasons for **rejecting** evidence. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). The Court notes that, other than the significant restrictions indicated in the other source check-box reports, there has been no medical evidence provided that conflicts with the opinions of the state agency reviewers. Accordingly, Plaintiff's argument with respect to the state agency reviewing medical professionals is without merit.

Based on the foregoing, the Court finds that the ALJ did not err by failing to find greater limitations than as assessed in the RFC determination. The ALJ's residual functional capacity assessment is supported by the weight of the record evidence and free of error.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of legal error. Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  Judgment shall be entered for Defendant and the file shall be **CLOSED**.

DATED April 9, 2019.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION . . . - 18